IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DESTINEY VIALET,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civ. No.  MJM-24-2551** |
| | * | |
| **HOWARD COUNTY DEPARTMENT OF** | * | |
| **SOCIAL SERVICES, et al.,** | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM ORDER**

Self-represented plaintiff Destiney Vialet ("Plaintiff") filed this civil action against Howard County Department of Social Services (the "Department") and several officials and employees of the Department (collectively, "Defendants") alleging violations of constitutional rights arising from the removal of minor children from her home and placement of the children in foster care. *See* ECF 1 (Compl.) & 8 (Am. Compl). Defendants moved to dismiss the Amended Complaint, ECF 11, and Plaintiff filed a response in opposition to the motion, ECF 14. No hearing is necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2025). For reasons explained below, the motion is granted, and the Complaint is dismissed without prejudice.

## I.    BACKGROUND[1]

Plaintiff alleges that the Department and several past and present employees of the Department inappropriately removed and sheltered one-year-old A.V. and one-month-old J.M., two children of Plaintiff and her husband ("Mosley"), from their home in September 2021. *See*

---

[1] The facts outlined in this part are drawn from allegations in the Amended Complaint. *See* ECF 8. Because the Amended Complaint contains inconsistent paragraph numbering, citations to that document include references to paragraph numbers for numbered paragraphs and page numbers when referenced paragraphs are unnumbered.

*generally* ECF 8 ("Am. Compl."). The removal was conducted after Mosley's mother, Ms. Jackson, made at least two referrals to the Department, reporting domestic violence and child abuse in August and September of 2021. *Id.* ¶¶ 17–19. The children were committed to the Department's care after a trial. *Id.* at 10–11.

Defendant Blair Grooms began making child wellness checks at Plaintiff's home in July 2021, shortly after J.M.'s birth. *Id.* ¶ 17. In response to reports of suspected abuse that included exposure to domestic violence, Grooms entered into safety plans with Plaintiff that included trips to a hospital to check A.V. and J.M. for skeletal fractures and an agreement that the children's father, Mosley, would stay away from the home. *Id.* ¶¶ 18–20. Plaintiff signed the plan reluctantly. *Id.* ¶ 20.

On September 3, 2021, Grooms, with defendant Jenifer Levy, came to Plaintiff's home. *Id.* at 8–9. Grooms asked Plaintiff about J.M.'s condition because his leg was shaking and also asked about whether Mosley had been at the home. *Id.* at 9. Plaintiff responded that J.M.'s leg shaking was normal and that Mosley had not been in the home. *Id.*

Grooms and Levy left and then returned three hours later with a written authorization for removal of A.V. and J.M. that was signed by defendant Michael Demidenko, Assistant Director of the Department. *Id.* Plaintiff was distressed and initially refused to comply. *Id.* However, after Grooms informed Plaintiff that Grooms had the right to remove the children and Plaintiff's refusal would result in police getting involved, Plaintiff complied and packed a bag of clothes, diaper, and food for the children. *Id.* at 9–10. Grooms and Levy then took Plaintiff's children to Howard County General Hospital. *Id.* at 9.

On September 7, 2021, a Maryland juvenile court conducted a shelter care hearing, and the judge ruled that A.V. and J.M. would remain in the Department's custody until trial. *Id.* at 10.

Shortly before the shelter care hearing, defendants Shandra Parks, Susan Glorios, Pamela Scalio, Levy, and Grooms attended a meeting with Plaintiff, Mosley, and Mosley's mother, Ms. Jackson. At the meeting, Grooms and Parks explained that although Plaintiff and Mosley demonstrated a bond with their children, the Department remained concerned about a previous child welfare case involving Plaintiff and Mosley, in addition to the multiple phone calls the Department received regarding the current situation. *Id.* Plaintiff and Mosley were cleared of the previous child welfare case. *Id.* On September 20, 2021, Grooms contacted Plaintiff to inform her that a follow-up X-ray of J.M. revealed 15 healing fractures. *Id.* Grooms asked Plaintiff if she knew what could have caused the fractures, and she replied, "No." *Id.*

About two months later, there was a trial where "J.M.'s X-ray results along with other allegations" were presented to the court by the Department and Ms. Jackson, Mosley's mother. *Id.* at 10–11. The Amended Complaint states that the Department and Ms. Jackson made false allegations, including allegations that (1) Mosley abused A.V.; (2) A.V. was underweight and fed only by Jackson; (3) T.M. was injured by Plaintiff and Mosley at the age of three months, and the parents did not have custody or visitation with T.M.; (4) Mosley smoked marijuana in the presence of the children; and (5) Plaintiff would let J.M. cry all day long and refused to cooperate with the Department to protect Mosley. *Id.* at 11. Grooms submitted multiple exhibits to the court and presented a verified dependency petition that was approved by the individual Defendants claiming that Plaintiff and Mosley had abused their children. *Id.* ¶ 38. According to Plaintiff, Defendants' allegations resulted in her children being placed in the foster care system, which limited her to visitation with her children. *Id.* at 11. After never missing a visit, completing training, taking other steps towards reunification and enrolling into school, Plaintiff and Mosley now have their children full time. *Id.* at 11.

On January 17, 2025, Plaintiff filed an Amended Complaint in this civil action pursuant to 42 U.S.C. § 1983 against the Defendants alleging perjury, fabrication of evidence, suppression of exculpatory evidence, supervisor liability, and failure to obtain a warrant for the removal of A.V. and J.M. *See* ECF 8. The Amended Complaint names as Defendants the Department, Demidenko, Glorios, Scalio, Grooms, Levy, Parks, and two other Department employees, Kathy Jackson and Emmett Woodard.[2] *Id.* Defendants filed a Motion to Dismiss asserting various pleading defects and governmental immunities from suit. *See* ECF 11. Plaintiff filed a response in opposition to the motion, ECF 14, and a "Proposed Order to Amended Complaint," ECF 13. In the latter filing, Plaintiff "recognizes the deficiencies in her First Amended Complaint as Defendants point out" and "[c]onsequently, … seeks leave to file a Second Amended Complaint to cure these defects."

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a

---

[2] Kathy Jackson is listed as a defendant in the caption and in Paragraph 11 of the Amended Complaint, but the pleading does not appear to include any allegations against her or about her role in the facts of the case. The Court infers that she is a different person than the "Ms. Jackson" identified as Mosley's mother because Kathy Jackson is alleged to be employed by the Department, Am. Compl. ¶ 11, while, in the original Complaint, Mosley's mother is alleged to have lived in Illinois between February 2021 and June 2021, when she moved in with Plaintiff and Mosley after experiencing homelessness out of state, Compl. ¶ 20.

Emmett Woodard is identified as a defendant in Paragraph 13 of the Amended Complaint but is not listed as a defendant in the caption, and the pleading does not appear to include any allegations against him or about his role in the facts of the case.

cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The pleadings of a pro se party must be construed liberally. *See, e.g.*, *Sause v. Bauer*, 585 U.S. 957, 960 (2018). This requirement does not permit a district court, however, "to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under federal law." *Griffin v. Maximus Inc.*, 641 F. Supp. 3d 251, 254 (W.D.N.C. 2022), *aff'd,* No. 22-2259, 2023 WL 3119813 (4th Cir. Apr. 27, 2023). When interpreting such a complaint, a district court is tasked with determining "what the words in the complaint mean," rather than "discern[ing] the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

## III.    ANALYSIS

Section 1983 provides a cause of action against a person who, acting under color of state law, subjects a person within the jurisdiction of the United States to the deprivation of federal

rights. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing claim for willful denial of medical care when plaintiff was unable to show that the official charged acted personally in the deprivation of rights); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations.").

### A. Count 1

Count 1 alleges that Defendants violated a "clearly established due process right to not be subjected to false accusations[.]" Am. Compl. ¶ 35. Specifically, Count 1 alleges that Defendants, individually and collectively, submitted fabricated or misleading evidence to the juvenile court and suppressed exculpatory evidence, which led to the Department being granted custody of Plaintiff's children. Defendants argue that Plaintiff's allegations are conclusory statements that do not allow this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." ECF 11-1 at 7. Moreover, Defendants argue, state social workers are absolutely immune from suit for this type of claim. *Id.* (citing *Vosburg v. Dept. of Soc. Servs.*, 884 F.2d 133, 134 (4th Cir. 1989)). Plaintiff states in her opposition that Grooms "falsely stated under penalty of perjury" that the injury suffered by J.M. is not easily explained absent child abuse and neglect and that there "there is substantial risk that the children will suffer serious physical harm." ECF 14 at 5.

Count 1, even construed liberally, fails to state a plausible claim for relief. A complaint must be sufficiently detailed such that a defendant has fair notice of the basis of plaintiff's claim. *See Twombly*, 550 U.S. at 55. Here, Count 1's references to the "fabrication" and "suppression" of evidence are not accompanied by any specifics as to what information was fabricated or suppressed. Therefore, Count 1's reliance upon conclusory allegations of "fabrication" and "suppression" does not suffice to state a claim.

The Amended Complaint does provide a list of allegations made by the "department and Mosley's mother Jackson" that Plaintiff contends were false, which includes statements like "Mosley abused A.V."; "A.V. was underweight"; and "Mosley smoked marijuana in the presence of our children." *See* Am. Compl. at 11. But Plaintiff does not differentiate between statements made by Mosley's mother and "the department," nor does she identify which individual defendants made which statements. Acts taken by Mosley's mother are not actionable under § 1983 because she is not alleged to be "acting under color of state law." *Gaines*, 657 F. Supp. 3d at 748 (quoting *West*, 487 U.S. at 48). In short, Plaintiff's allegations do not allow the court "to draw the reasonable inference that [any] defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 55.

Moreover, Plaintiff's core allegation here, that "false allegations [resulted] in [her] babies being placed in foster care," Am. Compl. at 11, are also appropriately dismissed under the *Rooker–Feldman* doctrine. "The *Rooker-Feldman* doctrine bars lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (citation omitted). "A federal claim is 'inextricably intertwined' with the state court judgment if the relief sought may be granted only on the federal court's finding that the state court

determined the issues before it erroneously." *Inkel v. Connecticut Dep't of Child. & Fams.*, 421 F. Supp. 2d 513, 522 (D. Conn. 2006) (citing *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 25 (1987) (plurality op.)).

Here, Plaintiff's claim that Department personnel "submitted false evidence and thereby obtained unwarranted orders of [] custody over the children are 'inextricably intertwined' with the juvenile court proceedings themselves." *Id.* Plaintiff is essentially asking this Court to second-guess the state court's factual and credibility findings. A complaint seeking "to recover on a theory that the defendants made false statements during state litigation […] is 'precisely what *Rooker-Feldman* prohibits.'" *Kasprzyk v. Axiom Fin. LLC*, 811 F. App'x 381, 383 (7th Cir. 2020) (citation omitted); *but see Foster v. Fisher*, 694 F. App'x 887, 888 (4th Cir. 2017) (agreeing with the district court that plaintiff failed to articulate how alleged perjury amounted to a viable claim under § 1983 and declining to address the district court's application of *Rooker-Feldman*). Therefore, Plaintiff's claim relating to the submission of false testimony or information to state court are subject to dismissal on *Rooker-Feldman* grounds.[3]

## B. Count 2

Count 2 alleges that defendants Demidenko, Scalio and Glorios acted with deliberate indifference to Plaintiff's constitutional rights by adopting a policy or practice "to present false and misleading evidence to the juvenile court in dependency cases" and had a "duty to … implement and follow policies … which … provide the protections guaranteed … [by] the United States Constitution[.]" Am. Compl. ¶¶ 40–43. Defendants argue that Count 2 is "so vague and unsupported" that it fails to state claim. ECF 11-1 at 8. Further, Defendants also argue that Count 2 is barred by immunity to the extent it is a repackaging of Count 1, and it fails to state a claim

---

[3] Because Plaintiff's pleading is defective with respect to Count 1, the Court need not address Defendants' immunity arguments.

because government officials may not be liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Plaintiff's response is difficult to discern. She appears to argue that the defendants in supervisory roles either approved "the alleged conduct" or failed to appropriately train their employees. *See* ECF 14 at 12.

As Judge Grimm stated in *Anderson v. Warden*, Civ. No. PWG-14-216, 2014 WL 2916882 (D. Md. June 25, 2014):

> Vicarious liability based on respondeat superior generally is inapplicable to § 1983 actions. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Liability of supervisory officials is not based on ordinary principles of respondeat superior, but rather is premised on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).
>
> To establish a claim for supervisory liability under § 1983, a claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Defendant's administrative responsibilities are insufficient to confer supervisory culpability.

2014 WL 2916882 at *2–3.

Here, Plaintiff does not allege any facts suggesting Demidenko, Scalio and Glorios knew and then disregarded risks that subordinates routinely presented false and misleading evidence to the juvenile court in dependency cases. Plaintiff's claim is vague and unsupported by factual allegations of any routine conduct by Defendants. Though the Court must construe pro se

9

complaint liberally, *see Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980), it cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). "Since Plaintiff fails to allege sufficient facts supporting [her] vague claims," *Hollis v. Amazon Sortation*, Civ. No. BAH-24-1870, 2025 WL 1920809, at *3 (D. Md. July 10, 2025), Count 2 must be dismissed.

### C. Count 3

Count 3 alleges that Defendants "knew, or had reason to know that it was, and is, the regularly established custom, usage, and or practice of DSS employees to obtain a warrant for the removal of each child." Am. Compl. ¶ 45. Defendants argue that Plaintiff alleges no facts from which it can be inferred that the Department's custom, usage, or practice is to obtain a warrant prior to placing a child in emergency shelter care. ECF 11-1 at 8. To the extent Count 3 is based upon a Fourth Amendment protection against unreasonable searches and seizures, Defendants argue that claim must fail because (1) Plaintiff consented to the Department's entry and removal of her children; and (2) the social workers who were on scene, Grooms and Levy, are entitled to qualified immunity. Plaintiff, relying on cases from the Ninth Circuit, argues that social workers can remove a child from a parent's custody without a warrant only in narrow circumstances and whether exigent circumstances existed is a question of fact for a jury. ECF 14 at 6–7.

In its entirety, Count 3 reads as follows:

> 44. Vialet is informed to believe and thereon that at all times relevant herein, there existed a clearly established due process right to not be subjected to a violation of those rights and warrantless seizures. In fact, Defendants, and each of them had the affirmative and self-evident duty to make sure that parent rights were not violated.
>
> 45. On information and belief, I allege that Assistant Director Demidenko, Glorious, Scalio, Grooms, Levy, Jackson, and Parks knew, or had a reason to know that it was, and is, the regularly established custom, usage, and or practice of DSS employees to obtain a warrant for the removal of each child.

10

Am. Compl. 44–45.

Defendants are correct that the Amended Complaint does not allege any facts to support Plaintiff's assertion that the Department had a "custom, usage, or practice" to obtain a warrant before placing a child in emergency shelter care. The Amended Complaint generally alleges that Defendants followed Maryland law regarding Child in Need of Assistance ("CINA") proceedings, which does not require a warrant before temporarily removing a child if an authorized state representative believes that the child is in serious immediate danger. *See generally In re: O.P.*, 235 A.3d 40 (Md. 2020); Md. Code Ann., Fam. Law § 5-709(c). Accordingly, any claim based on the Department's alleged "custom, usage, and or practice" fails.[4]

If Count 3 is based on any contention that Grooms and Levy's warrantless removal of the children violated the Fourth Amendment, this claim fails for two reasons: Plaintiff's lack of standing and Defendants' qualified immunity.

First, the rights secured by the Fourth Amendment are "personal rights," which "may be enforced … only at the instance of one whose own protection was infringed by the search and seizure." *Feller v. Feller*, Civ. No. TDC-18-0108, 2020 WL 1322946, at *4 (D. Md. Mar. 20, 2020) (citing *Rakas v. Illinois*, 439 U.S. 128, 138 (1978)) (citation modified). "Children are not property. Thus, the right to be free from an unreasonable seizure of their persons belongs to the children themselves, not their parents." *Id.* Accordingly, Plaintiff, who is suing *on her own behalf*, lacks standing to assert any Fourth Amendment claim for an unreasonable seizure that her children may have.

---

[4] If Plaintiff's claim is based on the contention that the Department had an custom or practice that caused the individual defendants to violate her federal rights, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), that claim fails because Plaintiff alleges (albeit without factual support) that the Department's custom or practice is to obtain a warrant before removing a child and also alleges that Defendants failed to obtain a warrant before removing her children.

Second, Grooms and Levy are entitled to qualified immunity. The doctrine of qualified immunity "bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)). Only one of these questions must be resolved in favor of the official for qualified immunity to apply. So, "even if a court finds or assumes that a government official violated an individual's constitutional rights, the official is entitled to immunity so long as the official did not violate clearly established law." *Id.* at 429. "[T]he clearly established right must be defined with specificity[]" and not "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

"To determine if the right in question was clearly established," courts in the Fourth Circuit "first look to cases from the Supreme Court, [the Fourth Circuit] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017). "In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" *Id.* (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017)).

Here, the facts alleged in the Amended Complaint raise no dispute that Grooms and Levy followed Maryland law, which permits the temporary removal of a child when the state believes the child is in serious immediate danger. *See* Md. Code Ann., Fam. Law § 5-709(c). Instead, Plaintiff complains that Grooms and Levy's determination (and consequently, the Department's and juvenile court's determination) that Plaintiff's children needed assistance was wrong or

12

unjustified. The Supreme Court of Maryland has recognized that the law governing CINA proceedings "must accommodate both a vital constitutional and human right with the State's special responsibility for the welfare of children." *In re: O.P.*, 470 Md. at 234. The Amended Complaint does not contain allegations from which it could be inferred that Grooms and Levy violated Plaintiff's clearly established rights in the execution of their duties. Nor does her opposition cite to any case law in this Circuit that clearly established any right Grooms and Levy violated. Accordingly, Grooms and Levy are entitled to qualified immunity from the claim asserted in Count 3.

## IV.   ORDER

Accordingly, it is by the United States District Court for the District of Maryland hereby ORDERED that:

1. Defendants' Motion to Dismiss (ECF 11) is GRANTED;

2. The Amended Complaint is DISMISSED without prejudice;

3. Plaintiff SHALL FILE no later than **April 1, 2026**, any motion for leave to amend that complies with the requirements of Local Rule 103.6 (D. Md. Dec. 2025), or notice that Plaintiff does not seek leave to amend;

4. The Clerk SHALL SEND a copy of this Memorandum Order to Plaintiff and counsel for Defendants.

It is so ORDERED this __11th__ day of March, 2026.

_____
Matthew J. Maddox
United States District Judge